UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| PAUL W. PERRY, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 4:10-CV-51 |
| v. ) | |
| ) | *Mattice / Lee* |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

### REPORT AND RECOMMENDATION

Plaintiff Paul W. Perry, Jr. ("Plaintiff") was denied disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of Social Security ("Commissioner" or "Defendant"), and he now appeals that denial.[1] Plaintiff has moved for judgment on the pleadings contending that the Administrative Law Judge ("ALJ") erred in his assessment of the opinions of two treating physicians and in constructing the hypothetical posed to a vocational expert ("VE") [Doc. 13, 14]. For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for judgment on the pleadings [Doc. 13] be **GRANTED**; (2) Defendant's motion for summary judgment [Doc. 19] be **DENIED**; (3) the decision of Commissioner be **REVERSED**; and (4) this action be **REMANDED** to the Commissioner for further proceedings.

### I. ADMINISTRATIVE PROCEEDINGS

Plaintiff protectively applied for DIB and SSI on February 15, 2007, alleging disability since July 1, 2004, due to low back, hand, and mental health issues (Tr. 118-132, 137). The Social Security Administration ("SSA") denied Plaintiff's claim initially and upon reconsideration (Tr.

---

[1] This action is brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), which provide for judicial review of the final decision of the Commissioner denying DIB and SSI benefits.

67-70, 77-80). After a hearing held May 5, 2009 (Tr. 30-55), the ALJ found Plaintiff was not disabled because he had the residual functional capacity ("RFC") for a limited range of sedentary work and could perform a significant number of jobs despite his limitations (Tr. 17-24). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review (Tr. 1), and this matter is now ripe for judicial review.[2]

## II. DISABILITY DETERMINATION PROCESS

SSA determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009). The claimant bears the burden of

---

[2] Plaintiff represents, and Defendant does not dispute, that Plaintiff has a complex prior claims history, including a closed period of disability spanning September 2002 through April 2004, followed by a finding that Plaintiff retained the ability to "perform sedentary and light work" during that time (Tr. 20). Defendant did not include the prior applications or decisions in the record filed with the Court, but Plaintiff does not dispute the accuracy of the procedural history [Doc. 14 at Page ID # 30, n.1].

2

proof at the first four steps to show the extent of her impairments, but the burden shifts to the Commissioner at step five to show there are jobs the claimant can perform despite her impairments. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). In order to make the required findings at steps four and five, the ALJ must assess the claimant's RFC, which refers to the maximum level of work the claimant can perform on a "regular and continuing basis"—i.e., for 8 hours per day, five days per week. Social Security Ruling ("SSR") 96-8p.

## III. FACTUAL BACKGROUND AND ALJ'S FINDINGS

### A. Plaintiff's Allegations of Disability and Hearing Testimony

Plaintiff had a 10th grade education and was 32 years old at the time of the ALJ's decision (Tr. 22, 37, 228). He has past relevant work as a carpenter, forklift operator, box making machine operator, general laborer and assembler (Tr. 35, 49).

During the hearing before the ALJ, Plaintiff testified as follows: he stopped working due to his back problems, which prevented him from sitting or standing for long periods of time, ankle pain, leg pain and mental health problems[3] (Tr. 39, 41). He reported he had pain running down his legs and in his ankles, had sleeping difficulties, had trouble picking things up, and did not like being around people (Tr. 41). His spinal fusion surgery helped his back pain only "a little bit" and medications, walking, and physical therapy did not help his pain (Tr. 41-42). Plaintiff testified that his insurance denied his doctor's request for a spinal stimulator (Tr. 41-42). He indicated that he stopped seeing Dr. Dreskin due to the pain caused by traveling to Chattanooga for appointments, and that Mr. Spradlin was managing his medications, which made him drowsy, dizzy and sleepy (Tr.

---

[3] Plaintiff has not raised any substantive issues concerning the Commissioner's decision with respect to his mental health and therefore this summary will not unnecessarily address his mental health issues.

3

42-43). Plaintiff could lift five to ten pounds, and could stand and walk for ten to 15 minutes each before needing to move around when standing or stop and rest when walking (Tr. 43). He needed to lie down at least three to four hours a day due to pain (Tr. 43).

The VE testified during the hearing as follows: Plaintiff had past relevant work as a carpenter (medium, skilled), a forklift operator (medium, semi-skilled), a box making machine operator (heavy, semi-skilled), a general laborer (heavy, unskilled), and an assembler (light, unskilled) (Tr. 49). The ALJ asked the VE to consider a person who could perform light and sedentary work that required no more than three to four hours of standing and walking; no more than three to four hours of sitting; the opportunity to perform his work in either a seated or standing position as his comfort level dictated; no climbing, stooping, bending from the waist to the floor, crouching, or crawling; no repetitive use of the right upper extremity; infrequent contact with the public and coworkers; non-confrontational supervision; and infrequent and gradually reduced changes in the work place (Tr. 50-51). The VE did not know whether such a person could perform Plaintiff's past relevant work, but such a person could perform approximately 70,000 sedentary jobs in the national economy, including assembly jobs (400 regionally, 22,000 nationally), inspector/tester jobs (250 regionally, 19,000 nationally), and general production jobs (900 regionally, 29,000 nationally) (Tr. 50-52).

### B. Medical Evidence Before the ALJ

The parties' briefs contain a detailed review of Plaintiff's medical history, which is largely undisputed. A brief summary of the medical evidence relevant to Plaintiff's physical impairments follows.

Following an on-the-job injury in 1998 (Tr. 324), orthopedic specialist S. Craig Humphreys,

4

M.D., diagnosed Plaintiff with an L4-5 left herniated disk impinging on the L5 exiting nerve root in 1999 (Tr. 324). In January 1999, Dr. Humphreys performed fusion surgery at L4-5 and Plaintiff was released to work in August 1999 (Tr. 325, 330). In August 2002, Dr. Humphreys diagnosed Plaintiff with a spine fracture at L5-S1, apparently caused by stress resulting from the prior fusion (Tr. 335). In January 2003, Plaintiff underwent hardware removal and more lumbar fusion surgery (Tr. 341). On April 1, 2003, Plaintiff reported pain in his low back radiating into his right leg (Tr. 343). By April 16, the pain was worse and Plaintiff reported he was taking large amounts of pain medication to get through the day and he rated his pain as nine and ten on a ten-point scale (Tr. 334-44). Dr. Humphreys noted pain management treatment would be appropriate in June 2003 (Tr. 346) and Dr. Stephen Dreskin became Plaintiff's pain management doctor in October 2003 (Tr. 446).

In April 2004, Plaintiff reported overall improvement and that he was taking minimal amounts of medication (Tr. 357). In July 2004, however, Plaintiff rated his pain as a nine out of ten on a ten-point scale, and said his pain had increased over the last 12 months (Tr. 358). In December 2004, Plaintiff reported severe right leg and low back pain (Tr. 360). While Dr. Humphreys noted Plaintiff had a normal gait, 5/5 motor strength in his legs, normal range of motion, no atrophy, and normal sensation and reflexes, he also prescribed a low-back brace and a lumbar epidural steroid injection (Tr. 360).

After some mental health issues, including substance abuse, Plaintiff presented to the emergency room at Grandview Medical Center in June 2006 complaining of low back pain (Tr. 258-76). Plaintiff was next seen for follow-up by Dr. Humphreys in August 2006, when he reported pain intensity of eight out of ten to the back and legs even with a Morphine prescription (Tr. 361). Plaintiff also said morphine was effective in controlling his pain (Tr. 361). Dr. Humphreys noted

5

that Plaintiff used a cane and had an antalgic (abnormal) gait (Tr. 362). On examination, he noted ankle clonus on the left, mildly diminished Achilles reflex on the right, and pain in a right S1 distribution, but Plaintiff had 5/5 strength and was neurologically intact (Tr. 362). Dr. Humphreys ordered an x-ray, which showed Plaintiff's hardware in good position (Tr. 362), and a computed tomography ("CT") scan, which indicated disc bulging, osteoarthritic changes, and mild foraminal narrowing, but no spinal stenosis. (Tr. 363-64, 448). Dr. Humphreys noted that right leg pain seemed to be Plaintiff's main concern and he recommended a steroid injection for this pain to be administered by Dr. Dreskin (Tr. 364).

In March 2007, Dr. Humphreys noted that "[n]othing surgical is indicated from orthopedic standpoint at this time." (Tr. 367). In April 2007, Dr. Humphreys completed a "Medical Assessment of Ability To Do Work Related Activities" in which he opined that Plaintiff could occasionally lift up to five pounds; sit for one hour at a time, up to three hours in an eight-hour day; and stand or walk for 30 to 60 minutes at a time, up to three to four hours in an eight-hour day (Tr. 451). Dr. Humphreys also opined that Plaintiff was unable to work for eight hours per day, five days a week (Tr. 452). Dr. Humphreys noted that Plaintiff's condition had existed in the state it was at the time of his opinion for three to four years (Tr. 453).

In May 2007, M. C. Woodfin, M.D. examined Plaintiff (Tr. 394-98). On examination, Plaintiff had a positive straight leg raising test (Tr. 397). Dr. Woodfin diagnosed low back pain, status post lumbar surgery, failed laminectomy syndrome, carpal tunnel syndrome, tobacco abuse, and a past history of using controlled substances (Tr. 397). Plaintiff reported he could sit for no longer than 15 minutes and lift no more than ten pounds (Tr. 394).

On June 12, 2007, James B. Millis, M.D., reviewed Plaintiff's medical records and

6

completed a physical RFC assessment (Tr. 403-10). Dr. Millis opined that Plaintiff could lift and/or carry 20 pounds occasionally and ten pounds frequently; stand and/or walk six hours per workday; sit six hours per workday; and should use his right hand no more than frequently (Tr. 404, 406).

Records from Dr. Dreskin document various pain management treatment, including prescriptions of Kadian, Lyrica, MS Contin, Hydrocodone, Senna, Celebrex, Klonopin and Tramadol (Tr. 421-44, 455-85). The medications and injections were helpful to Plaintiff at times, but he reported that he was unable to perform activities of daily living without them (Tr. 481). Physical examinations indicated findings of paraspinous tenderness, decreased range of motion of the bilateral lower extremities at times, positive bilateral straight leg raising, and decreased strength. (Tr. 422, 425, 428, 457-58, 466-67). Particularly relevant here, Dr. Dreskin opined in an August 2007 letter to Plaintiff's attorney that due to Plaintiff's impairments, "he is unable to work a full-time, full-duty position. If he is able to work at all, the positions must have the following limitations: No heavy lifting, frequent bending, stooping, pulling or pushing, and must have the ability to change positions frequently. [Plaintiff] is also on medications that may affect his ability to drive and have mental clarity. I defer to Dr. Craig Humphreys, orthopedic specialist, any questions regarding more specific work restrictions." (Tr. 446).[4]

In September 2007, Plaintiff presented to Dana Howe, N.P. with reports of bilateral wrist pain radiating up to the elbows, and numbness over the hands and he was referred to an orthopedic surgeon (Dr. Richard Bagby) (Tr. 527-28). Dr. Bagby, in November 2007, diagnosed moderately severe bilateral carpal tunnel syndrome and performed a right carpal tunnel release surgery (Tr. 493-

---

[4] In January 2008, Plaintiff admitted to taking non-prescribed Xanax and Dr. Dreskin indicated that he was no longer comfortable prescribing narcotics but continued prescribing Lyrica, Tramadol, and Xanax (Tr. 467). Dr. Dreskin also performed an injection in April 2008. (Tr. 455).

7

95). In December 2008, Plaintiff complained to a physician assistant, Donald Spradlin, PA-C, that he had right ankle pain (Tr. 502). Plaintiff then returned to Dr. Bagby, who diagnosed post-traumatic osteoarthritis in Plaintiff's right ankle (Tr. 492). After a steroid injection provided only a little help, Dr. Bagby surgically removed osteophytes and loose bodies present in Plaintiff's right ankle in February 2009 (Tr. 489-91).

In March 2009, Plaintiff reported to Mr. Spradlin that he recently hurt his back, requiring him to visit the emergency room (Tr. 499). On examination, Mr. Spradlin noted muscle spasms in Plaintiff's back (Tr. 499). In April 2009, Plaintiff's right ankle had swelling, but was healing well; he still had pain, but his osteoarthritis was not as bad as expected (Tr. 488). Plaintiff also complained of right knee pain (Tr. 488). On examination, Dr. Bagby noted crepitus (crackling) and asymmetry, but no effusion, atrophy, or specific tenderness, and good range of motion; he diagnosed Plaintiff with osteoarthritis in his right knee; he noted an X-ray of the knee showed flattening of the medial femoral joint space and spurring "disproportionate to age; but he also noted that the current indications of derangement did not indicate a need for surgery (Tr. 488).

At the May 2009 hearing, the ALJ said, "if you could get [a functional capacities exam] from the treating doctor it would be helpful." (Tr. 54). Apparently as a result, Mr. Spradlin completed a medical opinion form in which he opined that Plaintiff could occasionally lift up to five pounds; sit for ten to 15 minutes at a time, up to three to four hours in an eight-hour day; and stand or walk for 20 minutes at a time, up to three to four hours in an eight-hour day (Tr. 541-42). Mr. Spradlin opined that Plaintiff could infrequently bend at the waist and use his hands for fine manipulation (Tr. 542). He opined that Plaintiff's medication caused 30 to 45 minute lapses in memory or concentration after taking his medications (Tr. 543). Mr. Spradlin concluded that Plaintiff's medical

8

condition would make him absent from full-time work on a chronic basis (Tr. 543).

    **C.    ALJ's Findings**

After the hearing, the ALJ issued a decision in which he found that Plaintiff had not been disabled during the time period she alleged (Tr.16-24)[5]. At step one, the ALJ found that Plaintiff had met the insured status requirements of the Social Security Act through June 30, 2009 and that he had not engaged in substantial gainful activity since the alleged onset date, July 1, 2004 (Tr. 18). At step two, the ALJ found Plaintiff had several severe impairments: failed laminectomy syndrome, mood disorder, osteoarthritis in the right ankle status post arthrotomy, osteoarthritis in the right knee, anxiety, hypertension, status post lumbar fusion (Tr. 18). At step three, he found Plaintiff did not have an impairment or combination of impairments that meet or medically equal one of the listed impairments (Tr. 19). Between steps three and four, he found that Plaintiff had an RFC to perform a limited range of sedentary work (Tr. 20).[6] Based on the VE's testimony and his RFC assessment, the ALJ found that Plaintiff could not perform any of his past work but could perform other work existing in significant numbers (Tr. 22). Accordingly, he found Plaintiff had not been disabled from July 1, 2004, through the date of the decision, October 19, 2009 (Tr. 23).

**IV.    ANALYSIS**

In summary, Plaintiff asserts the ALJ erred in his review and assessment of the opinions of

---

    [5] These page numbers in the record are "over-stamped" and difficult to read.

    [6] The ALJ found Plaintiff has the RFC to perform sedentary work as defined "except standing and/or walking for three to four hours in an eight-hour day, sitting for three to four hours in an eight-hour day, with an option to sit and stand at will; avoiding climbing, stooping, bending from the waist to the floor, crouching and crawling; avoiding hazards; avoiding repetitive use of the upper right extremity. [Plaintiff] is limited to performing simple, non-detailed tasks where co-worker and public contact is casual and infrequent, where supervision is direct and non-confrontational, and where changes in the workplace are infrequent and gradually introduced." (Tr. 20).

two treating physicians by failing to mention the opinion of Dr. Dreskin, by failing to state the weight accorded to the opinion of Dr. Humphreys, and by failing to provide good reasons for not adopting Dr. Humphreys' opinion. Plaintiff also asserts the ALJ posed a faulty hypothetical to the VE and the ALJ's RFC differs materially from the hypothetical.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters*, 127 F.3d at 528). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, 2009 WL 2579620, *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments

10

of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claim of error without further argument or authority may be considered waived). The court may, however, consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

### B. Opinion Evidence

With regard to the opinion evidence, the ALJ accorded weight to the state agency medical consultant, adapting the RFC "to incorporate the portions of the treating source statements that are consistent with the medical and other evidence." (Tr. 22). The ALJ's decision does not mention the opinion of Dr. Dreskin, except to note that the "pain management specialist deferred to Dr. Humphreys' assessment." (Tr. 21). With regard to the opinion of Dr. Humphreys, the ALJ's decision describes the opinion but does not specifically state or explain the weight afforded the opinion, though the decision states, "the opinion that the claimant cannot demonstrate reliability or maintain concentration is not warranted with a sedentary job." (Tr. 22). The decision correctly noted that the state agency consultant opined Plaintiff could perform light work, lifting ten pounds frequently and 20 pounds occasionally, sitting about six hours in an eight-hour workday, and standing and/or walking about six hours in an eight-hour workday, with "repetitive use of the right hand limited to frequently" due to carpal tunnel syndrome (Tr. 21, 403-10).

An ALJ is obligated to give "controlling weight" to a treating physician's opinion so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and

11

is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2). Even if not entitled to controlling weight, a treating physician's opinion is entitled to weight commensurate with the length of the treating relationship and the frequency of examination, the nature and extent of the treating relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id*. The ALJ must "assign a specific weight" to the opinion based on his consideration of these factors, *Cole v. Comm'r of Soc. Sec.*, No. 09-4309, slip op. at 8-9 (6th Cir. July 15, 2011), and must give "good reasons" for assigning less than controlling weight, *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). Those "good reasons" must be "sufficiently specific to make clear to any subsequent reviewers the weight [given] to the . . . opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242. Of course, the "good reasons" must also be "supported by the evidence in the case record." *Id. See also Johnson v. Comm'r of Soc. Sec.*, —F.3d—, 2011 WL 2652192, *5 (6th Cir. July 8, 2011) (remanding where the ALJ's reasons for rejecting a treating physician's opinion were "simply inaccurate"); Cole, No. 09-4309, slip op. at 9 (remanding where ALJ's reasons for rejecting opinion were "contrary to" the evidence in the record).

The "good reasons" rule is not merely a formality; instead, it confers a valuable procedural right on the claimant. *Wilson*, 378 F.3d at 547. It "exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that h[er] physician has deemed h[er] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not.'" *Id.* at 544 (internal quotations omitted). Consequently, failure to comply with this mandatory procedural protection requires reversal, even if substantial evidence

12

otherwise supports the ALJ's findings, unless the error is "a harmless *de minimis* procedural violation." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (*citing Wilson*, 378 F.3d at 547).[7]

### 1. Dr. Dreskin

I **FIND** the ALJ failed to give good reasons for discounting the opinion of Dr. Dreskin. This matter must therefore be remanded unless the error was harmless. A violation may be harmless for any of three reasons. First, if the Commissioner ultimately adopts an RFC consistent with the treating physician's opinion, there is no harm in failing to explain what weight it was given. *See Wilson*, 378 F.3d at 547. Second, a violation of the good reasons rule may also be considered harmless when the treating source's opinion was "so patently deficient that the Commissioner could not possibly [have] credit[ed] it," or, third, where the Commissioner "has met the goal of . . . the procedural safeguard of reasons." *Wilson*, 378 F.3d at 547.

Plaintiff argues that the ALJ erred by not mentioning Dr. Dreskin's opinion addressing Plaintiff's functional abilities regarding positional changes, lifting, and postural activities. The Commissioner argues that although the ALJ did not specifically address Dr. Dreskin's opinion that Plaintiff should do "[n]o heavy lifting, frequent bending, stooping, pulling or pushing, and must have the ability to change positions frequently" (Tr. 446), the ALJ's RFC finding was consistent with Dr. Dreskin's opinion concerning those restrictions. Further, the Commissioner argues Dr.

---

[7] Dr. Dreskin and Dr. Humphreys are physicians who provide, or have provided, Plaintiff with medical treatment or evaluation and who have, or have had, an ongoing treatment relationship with Plaintiff, making them treating physicians. 20 C.F.R. § 404.1502. A treating physician is contrasted with a physician whose opinion is sought solely based on a claimant's need to obtain a report in support of a claim for disability. *Id.* The opinions of Dr. Dreskin and Dr. Humphreys are entitled to the procedural protections prescribed by *Wilson*, and the Commissioner does not contend otherwise.

Dreskin's opinion that Plaintiff was unable to work, if considered raised by Plaintiff, is an opinion on an issue reserved for the Commissioner and deserved no special significance or mention pursuant to 20 C.F.R. § 404.1527(e). However, while an ALJ may properly disregard a physician's ultimate conclusion that a claimant is disabled, he may not disregard the physician's *bases* for that opinion. SSR 96-5p; *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 493 (6th Cir. 2010).

The ALJ found Plaintiff could do sedentary work, which is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). The Commissioner argues this "insubstantial" lifting requirement could reasonably be considered as consistent with Dr. Dreskin's limitation to no "heavy lifting." The Commissioner also argues the ALJ gave Plaintiff the option to sit and stand at will, which is reasonably consistent with Dr. Dreskin's limitation requiring Plaintiff to change positions frequently. Finally, the Commissioner argues the ALJ found that Plaintiff must avoid climbing, stooping, bending from the waist to the floor, crouching, and crawling, which is more restrictive than Dr. Dreskin's limitation of Plaintiff to frequent postural activities. As argued by the Commissioner, Plaintiff has not offered any of Dr. Dreskin's restrictions that were not accommodated by the RFC assessment. Because the ALJ's RFC finding is reasonably consistent with Dr. Dreskin's stated limitations, I **FIND** the ALJ's error in failing to specifically address the opinion, other than to note Dr. Dreskin had deferred more specific restrictions to Dr. Humphreys, was harmless. *See Wilson*, 378 F.3d at 547.

    **2.**    **Dr. Humphreys**

Plaintiff argues the ALJ failed to state the weight he afforded Dr. Humphreys' opinion and did not provide good reasons for its rejection. Specifically at issue is the portion of Dr. Humphreys'

14

opinion concluding that Plaintiff "would not have the capacity to attend to work without requiring more than four absences per month and/or requiring multiple unscheduled absences from a duty station for greater than 10 minutes at a time during the day." [Doc. 14 at PageID #: 44, citing Tr. 452].

While the ALJ's decision accurately summarizes Dr. Humphreys' opinion, it does not "assign a specific weight" to the opinion. *See Cole*, No. 09-4309, slip op. at 8 (failure to assign weight is error). The ALJ did, however, indicate that he adopted some portions of the treating physicians' opinions and discounted others. The ALJ "adapt[ed]" the RFC "to incorporate the portions of the treating source statements that are consistent with the medical and other evidence[]," and stated that the final RFC assessment was "consistent with the treating source opinions as far as the limitations on sitting, standing and walking." (Tr. 22). The ALJ found, however, that "[Plaintiff's] past work was heavy, and the opinion that the claimant cannot demonstrate reliability or maintain concentration is not warranted with a sedentary job." (Tr. 22). It is reasonable to assume, as both parties do, that this statement relates to Dr. Humphreys' opinion. This statement is also the *only* reason given by the ALJ for rejecting Dr. Humphreys' opinion regarding Plaintiff's "reliability." An ALJ may implicitly give reasons for rejecting a treating physician's opinion in language preferring a non-treating physician's opinion, *see Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006), but there is nothing in the ALJ's discussion of the consultant's opinion that provides any insight into why the ALJ might have discounted Dr. Humphreys' opinion that Plaintiff would not have the capacity to attend to work without requiring more than four absences per month.

In an argument kindly described as minimal at best, Commissioner contends the ALJ

15

provided the required good reasons concerning Dr. Humphreys' opinion when he stated that Dr. Humphreys' limitations concerning Plaintiff's reliability and concentration are "not warranted with a sedentary job" because

> by definition, sedentary work would not require the exertion and accompanying pain as would a job in the light or greater category. *See* 20 C.F.R. § 404.1567(a). Because the ALJ accommodated Plaintiff's allegations of disabling pain by limiting him to sedentary work, with a sit/stand option, no further limitations were needed to address Plaintiff's reliability or ability to maintain concentration.

[Doc. 20 at PageID #: 67-68]. In other words, the Commissioner argues superficially that the ALJ's reason was a "good reason" because sedentary work requires less exertional effort than other categories. The Commissioner does not, however, address the substance of Plaintiff's argument—namely, that the record does not contain any basis for concluding that this distinction between sedentary and non-sedentary work makes a difference in Plaintiff's case.

Significantly, Dr. Humphreys' opinion is not limited in any way to only certain types of work. To the contrary, it would appear that Dr. Humphreys' opinion concerning Plaintiff's need to be absent from both his duty station and work would apply to the individual, not the classification of work whether it be sedentary, light, medium, or heavy. The ALJ failed to provide any good reason to explain why Dr. Humphreys' opinion regarding absences from Plaintiff's work would not apply to a limited range of sedentary work. The only authority cited by Commissioner to support his position is 20 C.F.R. § 404.1567(a), which merely defines the physical exertion requirements of sedentary work and does not address reliability or absences from work in any way. Neither the ALJ's opinion nor the Commissioner's brief identifies any evidence showing that Dr. Humphreys' opinion would apply only to a particular category of work when it was not so limited by Dr. Humphreys himself. Consequently, I **FIND** the ALJ's rationale was not "supported by the evidence

16

in the case record." *See Rogers*, 486 F.3d at 242. The ALJ's decision therefore failed to give a "good reason" for rejecting Dr. Humphreys' opinion. I further **FIND** this is not the rare case in which the ALJ's opinion, though failing to meet the letter of the good reasons rule, nonetheless satisfies its goal. *See Wilson*, 378 F.3d at 546-47.

Accordingly, I **CONCLUDE** that this matter must be remanded to the Commissioner for further appropriate consideration. Under these circumstances, it is not necessary to address Plaintiff's contentions regarding the hypothetical posed to the VE.

## V. CONCLUSION

For the foregoing reasons, I **RECOMMEND:**[8]

(1) Plaintiff's motion for judgment on the pleadings [Doc. 13] be **GRANTED**;

(2) Defendant's motion for summary judgment [Doc. 19] be **DENIED**;

(3) The Commissioner's decision denying benefits be **REVERSED** and this action be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[8] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).